# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JEREMY CLARK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 08-S-0204-NE** |
| | ) | |
| **RAYMOND F. SCHINAZI, Ph.D.;** | ) | |
| **and PHARMASSET, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This action is before the court on motions filed by defendants, Pharmasset, Inc., and Raymond F. Schinazi, Ph.D., asking the court to stay the case pursuant to 9 U.S.C. § 3, pending arbitration of the claims set forth in the complaint.[1]  Defendants rely on an arbitration provision embedded in an Employment Agreement between plaintiff, Jeremy Clark, and Pharmasset, Inc.[2]  Plaintiff contests the validity of the Employment Agreement and its arbitration clause, and requests oral argument.[3]  For

---

[1] *See* doc. no. 15 (Pharmasset's motion to stay) and doc. no. 20 (Schinazi's motion to stay). Pharmasset and Dr. Schinazi have not requested that this court compel arbitration.  However, plaintiff entitled his response to the motions to stay this action as "Statement in Opposition to Defendants' Motion to Compel Arbitration."  Doc. no. 22.  Pharmasset noted the title of plaintiff's response in its reply brief, and stated that "[t]he Defendants have filed motions only to stay this action pending arbitration; they have not moved to compel arbitration."  Doc. no. 25 ("Reply Brief in Support of Pharmasset, Inc.'s Motion to Stay Action Pending Arbitration"), at 3 n.1.

[2] *See* doc. no. 22 (plaintiff's statement in opposition to defendants' motion to compel arbitration), at Exhibit 5 (Employment Agreement).

[3] *See* doc. no. 23 (Request for Oral Argument).

the reasons discussed below, defendants' motions must be granted; consequently, plaintiff's request for oral argument will be denied.

## I. BACKGROUND

This action arises out of the fact that, while working for Pharmasset, plaintiff invented a molecular compound known as "PSI-6130," a promising treatment and potential cure for infections caused by the Hepatitis C virus.[4]

Pharmasset was founded by Dr. Raymond Schinazi, and he served as its president and chairman of the board before the company was restructured as a publically-traded corporate entity.[5]   Plaintiff alleges that Dr. Schinazi and other agents of Pharmasset successfully recruited him to work as a chemist for the company,[6] and that he entered into an "Employment Agreement" with Pharmasset on

---

[4] *See* doc. no. 1 (Complaint), ¶ 4.  Plaintiff commenced this action on Feb. 5, 2008; two days later, on Feb. 7, 2008, he filed an "Amended Complaint," a pleading that amends only the wording of paragraphs 1, 12, and 13 of the original complaint.  *See* doc. no. 5.  In other words, plaintiff's counsel did not follow the accepted (and better) practice of filing a document that incorporated *both* the *unamended* paragraphs of the original complaint *as well as* the revised statements of paragraphs 1, 12, and 13 contained in the so-called "Amended Complaint."  This deviation from accepted practice makes it more difficult for the court to cite where certain allegations are found.  For example, in order to be technically correct, a citation to the revised wording of paragraphs 12 and 13 — such as that found in note 6 *infra* — should be written as "See doc. no. 5 (Amended Complaint), ¶¶ 3, 4 (amending paragraphs 12 and 13 of the original complaint, respectively)."  That citation format is far too cumbersome, however.  Consequently, whenever this court has need to reference any of the three paragraphs of the original complaint amended by doc. no. 5, it simply will reference the number of the paragraph in the original complaint in which that information was found, prior to amendment.

[5] *See* doc. no. 19 (Answer of Schinazi), ¶ 2.

[6] *See* doc. no. 5 (Amended Complaint), ¶¶ 12, 13.  (See note 4, *supra*, for an explanation of this citation.)

or about July 23, 2001.[7]   Section 6 of the agreement addressed the subject of "Inventions," and its provisions read as follows:

> 6.1     The terms and provisions of this Section 6 shall apply only to Inventions (as hereinafter defined) which Employee makes, develops, or conceives, either solely or jointly with others, in the course of Employee's employment by the Company or with the use of the Company's trade secrets, time, material, facilities, employees or advisors.

> 6.2     Employee hearby assigns and agrees to assign to the Company, its successors, assigns, or designees, all of Employee's rights to inventions, improvements, discoveries, processes, formulae, designs, technical information, know-how, data, specifications, Trade Secrets, test results, patents, trademarks, copyrights, computer programs, and other proprietary information relating to the development, production, distribution and licensing of antiviral and anticancer agents, immunomodulators and other treatments of chronic or life-threatening diseases ("Inventions") which, during the term of Employee's employment by the Company, Employee makes, develops, or conceives, either solely or jointly with others, in the course of such employment or with the use of Company's Trade Secrets, time, material, facilities, employees, or advisors.  Employee agrees to fully and promptly disclose in writing to the Company any such Inventions as such Inventions may from time to time arise.

> 6.3     Employee further agrees, without charge to the Company other than reimbursement of Employee's reasonable out-of-pocket

---

[7] Plaintiff alleges that he signed an employment agreement "with *Schinazi and* Pharmasset." Doc. no. 5 (Amended Complaint) ¶ 12 (emphasis added).  However, the photostatic copy of the Employment Agreement that is attached to the Declaration of Bryce A. Roberts, Pharmasset's Director of Legal Affairs, clearly establishes that the agreement was "made and entered into . . . by and between PHARMASSET, INC., a Georgia corporation ('the company'), and **Jeremy L. Clark** ('Employee')."  Doc. no. 18, Ex. A at 1 (all emphasis in original); *see also* doc. no. 22 (plaintiff's "Statement in Opposition to Defendants' Motion to Compel Arbitration"), Ex. D (Employment Agreement between plaintiff and Pharmasset) at 3 (same).

expenses, to execute and deliver all such further documents, including applications for patents and copyrights, and to perform such acts, at any time during or after the term of this Agreement as may be necessary to obtain patents or copyrights in respect of the Inventions and to vest title to such Inventions in the Company, its successors, assigns or designees and to carry out the purpose of this Section.   Without limiting the generality of the foregoing, Employee further agrees to give all lawful testimony, including without limitation depositions, during or after the term of Employee's employment, which may be required in connection with any proceedings involving any Trade Secret, patent or patent application, so assigned by Employee.[8]

During a seven month period between November 2002 through May 2003, and

while employed by Pharmasset pursuant to the foregoing agreement, plaintiff

conceived of, developed, invented and tested a molecular compound, now referred to as PSI-6130, which he thought could have enormous potential to treat and even cure HVC, type 1 infections.

15.    On may 30, 2003, Schinazi and Pharmasset filed with the U.S. Patent and Trademark Office a provisional application attempting to protect patent rights to the PSI-6130 compound.   Clark [*i.e.*, plaintiff, Jeremy Clark] and another employee at Pharmasset were listed as inventors of the compound.    Schinazi and Pharmasset filed the application without Clark's approval or consent.

. . . .

17.    On April 21, 2004, Clark and Pharmasset filed several non-provisional patent applications for PSI-6130, correctly listing Clark as the sole inventor.

18.    In May 2004, Clark assigned his rights in PSI-6130 to

---

[8] *Id*. at 3.

Schinazi and Pharmasset.  . . .[9]

Plaintiff asserts that, in or about June of 2004, the value and promise of PSI-6130 allowed Pharmasset to raise $40 Million Dollars in private investments and to expand the company.[10]  Plaintiff states that he left the company in early 2005.[11]  Two years later, during April of 2007, Pharmasset began to trade its stock publicly on the NASDAQ exchange.[12]   Plaintiff alleges that the stock price made a "dramatic increase" that "is directly attributable to the recent successes of PSI-6130 and its pro-drugs in clinical trials."[13]

Plaintiff filed a complaint in this court on February 5, 2008, seeking rescission of the Employment Agreement and subsequent agreements between the parties, a declaratory judgment that the agreements between the parties are void and unenforceable, and imposition of a constructive trust upon Pharmasset and Dr. Schinazi for all money earned as a result of his invention of PSI-6130.[14]  Plaintiff also asserted Alabama state law claims against Pharmasset and Dr. Schinazi for unjust

---

[9] Doc. no. 1 (Complaint), at 3-4.

[10] *Id.*, ¶ 19.

[11] *Id.*, ¶ 21.

[12] *Id.* at ¶ 24.

[13] *See* doc. no. 5 (Amended Complaint), ¶ 24.

[14] *See* doc. no. 1 (Original Complaint) and doc. no. 5 (Amended Complaint).

enrichment, conversion, fraud, and fraudulent suppression of material facts.[15]

Pharmasset and Dr. Schinazi each filed an answer denying the allegations of plaintiff's complaint, and subsequently moved to stay the action pending arbitration of the claims pursuant to the arbitration provision embedded in the Employment Agreement.[16]   The arbitration clause at issue reads as follows:

> In the event that a party to this Agreement perceives the existence of a dispute with the other party concerning any right or duty provided for herein, the parties will, as soon as practicable, confer and attempt to resolve the dispute.  If the parties are unable to resolve such dispute amicably, then the parties hereby submit to final, binding arbitration. Arbitration shall be conducted under the Commercial Arbitration Rules of the American Arbitration Association by three arbitrators, one to be appointed by the Company, one to be appointed by the Employee, and one to be appointed by the two arbitrators appointed by Company and Employee.  Arbitration shall take place in Atlanta, Georgia, and the decision of the arbitrators shall be enforceable, but not appealable, in a court of competent jurisdiction.  The fees and expenses incurred in connection with such arbitration shall be borne by the party initiating the arbitration proceeding (or equally by both parties if both parties jointly initiate such proceeding)  subject to reimbursement by the party which does not prevail in such proceeding.[17]

## II.  DISCUSSION

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, establishes a federal policy favoring arbitration and a body of substantive law governing the subject.  *See,*

---

[15] *Id.*

[16] *See* doc. no. 15 and doc. no. 21.

[17] *See* doc. no. 22, Exhibit 5 (Employment Agreement).

*e.g.*, *Shearson / American Express*, *Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983) (holding that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). The FAA was enacted "to reverse the longstanding judicial hostility to arbitration agreements." *Gilmer v. Interstate / Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

Section 3 of the FAA provides that, if a lawsuit in federal court has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

To effectuate the federal policy favoring arbitration, the FAA further provides a procedure for compelling enforcement of arbitration agreements in cases where one party refuses to comply: the proponent of arbitration may petition any district court having jurisdiction to order compliance, in which case the court must order arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4.

Despite the presumption favoring arbitration, the FAA prohibits the enforcement of an arbitration provision that is invalid "upon such grounds as exist at

-7-

law or in equity for the revocation of any contract."  9 U.S.C. § 2 (2004).[18]  The

Supreme Court has recognized two types of challenges based on such grounds.

> One type challenges specifically the validity of the agreement to
> arbitrate.  *See, e.g., Southland Corp. v. Keating*, 465 U.S. 1, 4-5, 104 S.
> Ct. 852, 79 L. Ed. 2d 1 (1984) (challenging the agreement to arbitrate as
> void under California law insofar as it purported to cover claims brought
> under the state Franchise Investment Law).  The other challenges the
> contract as a whole, either on a ground that directly affects the entire
> agreement (e.g., the agreement was fraudulently induced), or on the
> ground that the illegality of one of the contract's provisions renders the
> whole contract invalid.

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006) (footnote

omitted).

The categorization of the type of challenge to the arbitration provision is

necessary for applying the Court's holdings in *Prima Paint Corp. v. Flood & Conklin*

*Manufacturing Co.*, 388 U.S. 395 (1967), and *Southland Corp. v. Keating*, 465 U.S.

1 (1984), which established that, "unless the challenge is to the arbitration clause

itself, the issue of the contract's validity is considered by the arbitrator in the first

instance."  *Buckeye Check Cashing*, 546 U.S. at 445-46.  The *Buckeye* Court

recognized that its holdings in *Prima Paint* and *Southland* permit courts "to enforce

---

[18] There is no dispute in this case that the Employment Agreement is in writing; further, the
FAA's broad interstate commerce requirement is satisfied in this case because Pharmasset's business
of developing drugs to treat viral infections clearly involves interstate commerce.  Further, the
Supreme Court directed district courts to accord an expansive construction to the FAA's phrase
"involving commerce."  *See Allied-Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 268 (1995).

an arbitration agreement in a contract that the arbitrator later finds to be void," but justified this apparent paradox on the basis that a contrary rule would allow "a court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable." *Id*. at 448-49.   The issue before this court, therefore, is whether the court or a panel of arbitrators should decide whether plaintiff's Employment Agreement is void for illegality.

Plaintiff argues that the court, and not a panel of arbitrators, must decide the threshold issue of arbitrability because (according to him) the Employment Agreement as a whole, *and* the arbitration provision specifically, are void for illegality.   The crux of the plaintiff's argument is the contention that Dr. Schinazi's alleged, simultaneous employment at both Pharmasset and the Department of Veterans Affairs, and the compensation Dr. Schinazi received from both entities, rendered either Pharmasset or Dr. Schinazi (or both) in violation of 18 U.S.C. § 209, the pertinent portion of which reads as follows:

> Whoever receives any salary, or any contribution to or supplementation of salary, as compensation for his services as an officer or employee . . . of any independent agency of the United States . . . from any source other than the Government of the United States, except as may be contributed out of the treasury of any State, county, or municipality; or
>
> Whoever, whether an individual, partnership, association, corporation, or other organization pays, makes any contribution to, or in any way supplements, the salary of any such officer or employee under

circumstances which would make its receipt a violation of this subsection—

Shall be subject to the penalties set forth in section 216 of this title.

18 U.S.C. § 209(a).  Plaintiff argues that the relationship between Pharmasset and Dr. Schinazi was in violation of this Code section because the statute prohibits a private entity from paying salary to an employee of any independent agency of the United States.  The statute likewise prohibits an employee of any independent government agency from receiving salary from a source other than the United States government. *See* 18 U.S.C. § 209(a).

Plaintiff argues that his Employment Agreement was made in furtherance of business allegedly conducted in violation of 18 U.S.C. § 209 and, therefore, it is illegal and unenforceable as a whole.  Plaintiff further asserts that "the [arbitration] provision *specifically*, in the same and/or similar manner to the contract as a whole, is unenforceable" because it specifically "1) contemplates the violation of a statute, 18 U.S.C. § 209, as a mode of execution, and 2) was made in furtherance of a business conducted in violation of law, specifically 18 U.S.C. § 209."[19]  Plaintiff then argues that because he is, in part, challenging the validity of the arbitration provision specifically, under *Buckeye* only a federal court may decide whether the Employment

---

[19] Doc. no. 22, at 5, n. 1 (emphasis original).

Agreement and arbitration provision are valid.  *See* 546 U.S. at 449.  This contention is based on the Court's statement in *Buckeye* that "a challenge to the validity of a contract as a whole, and not *specifically* to the arbitration clause, must go to the arbitrator."  *See id*.  In the alternative, plaintiff argues that *Buckeye* and the precedent upon which it was based — *Prima Paint* and *Southland* — are wrongly decided and due to be overturned.

Pharmasset and Dr. Schinazi respond that the Court's decision in *Buckeye* was correctly decided, and that it foreclosed plaintiff's argument that only a federal court, and not an arbitration panel, may decide whether the Employment Agreement is void for illegality.  Pharmasset and Dr. Schinazi contend that plaintiff's challenge to the arbitration provision is the same challenge to the Employment Agreement as a whole, and that, in *Buckeye*, the Supreme Court held that as long as the challenge is not to the legality of the arbitration provision itself, the issue of the whole contract's validity goes to an arbitrator.  Pharmasset and Dr. Schinazi further note the plaintiff has failed to argue that the arbitration provision itself has any illegal provisions.

The court finds that under the sweeping holding of *Buckeye*, it is powerless to consider plaintiff's challenges to the validity of the entire Employment Agreement, including the arbitration provision, because his challenges are not specific to the arbitration provision.  *See* 546 U.S. at 445-46.  Plaintiff's argument that the

arbitration provision is illegal because it contemplates a violation of 18 U.S.C. § 209 and was made in furtherance of business conducted in violation of 18 U.S.C. § 209 are "ground[s] that directly affect[] the entire agreement." *Buckeye*, 546 U.S. at 444 ("The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid."). Plaintiff's challenges to the validity of the arbitration provision could be made to any individual provision of the Employment Agreement. Accordingly, the question of whether the Employment Agreement is void for illegality is an issue to be decided by a panel of arbitrators in the first instance, and not this court.[20] *See id*.

### III. CONCLUSION

In accordance with the foregoing, the motions of Pharmasset and Dr. Schinazi's to stay the action pending arbitration will be GRANTED. Plaintiff's request for oral argument on the motions will be DENIED. An appropriate order consistent with this memorandum will be entered contemporaneously herewith.

---

[20] The court is also unpersuaded by plaintiff's argument that this case is distinct from *Buckeye* because, he says, the arbitration provision here is narrow in scope and does not contemplate arbitration of the issue of validity of arbitration provision. The parties adoption of the Commercial Arbitration Rules of the American Arbitration Association in the arbitration provision permits arbitration of the validity of that provision. *See Terminix International Co., LP v. Palmer Ranch Limited Partnership*, 432 F.3d 1327 (11th Cir. 2005) ("By incorporating the AAA Rules, including Rule 8, into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid.").

DONE this 17th day of December, 2008.

_____
United States District Judge